***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner George Glenn and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS, with minor modifications, the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff's average weekly wage was sufficient to generate the maximum compensation rate on the date of plaintiff's injury.
3. At all time relevant to this matter, an employer-employee relationship existed between employee-plaintiff and defendant-employer.
4. Lumbermen's Mutual Casualty Company insured defendant-employer for workers' compensation at all time relevant herein.
5. On October 18, 1999, plaintiff sustained an injury by accident to his right shoulder while in the course and scope of his employment with defendant-employer.
6. Defendants have accepted this claim as compensable and plaintiff has been paid compensation for total disability from November 25, 1999, through February 13, 2000, from April 25, 2000, through October 15, 2000, and from January 15, 2001, through the present. Plaintiff has also been paid partial disability benefits from October 19, 1999, through November 15, 1999, from February 14, 2000, through April 24, 2000, and from October 16, 2000, through January 14, 2001.
7. Subsequent to the hearing, on November 21, 2003, the hearing tapes could not be located. The only witness to testify at the hearing was plaintiff. In lieu of holding another hearing to take plaintiff's testimony, the parties stipulated to the summary of testimony of plaintiff attached to their June 1, 2004, stipulation and incorporated by reference as Exhibit A.
8. The issue to be determined from this hearing is as follows:
 Whether defendants are obligated to pay for treatment of plaintiff's left shoulder condition, including the August 2003 surgery by Dr. Kevin Speer?
 ***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 61-year-old high school graduate. Plaintiff began to work for defendant-employer in 1978 and last worked for defendant-employer in January 2001. The plaintiff retired because he was unable to return to work as a result of his right shoulder injury. Plaintiff is right hand dominant.
2. Plaintiff sustained an injury to his right shoulder on October 18, 1999, when he slipped on alcohol that had spilled and fell backward into a steel locker. As a result of this injury, plaintiff has had five surgeries to his right shoulder.
3. Dr. Andrew Collins, an orthopedic surgeon, performed the first three surgeries. The first surgery on November 16, 1999, was for a right shoulder rotator cuff tear and symptomatic degenerative acromioclavicular joint. The second surgery on April 25, 2000, was for repair of a massive right shoulder rotator cuff tear. The third surgery on August 15, 2000, was for a recurrent rotator cuff tear and ruptured biceps tendon. Prior to the third surgery, plaintiff had a series of right stellate ganglion blocks for treatment of sympathetically medicated pain about the right shoulder.
4. Following the third surgery, defendants sent plaintiff to Dr. Kevin Speer, an orthopedic surgeon, for treatment. Plaintiff has been under Dr. Speer's care since he was first seen on November 29, 2000.
5. Dr. Speer has performed surgery twice on plaintiff's right shoulder. The first surgery on January 15, 2001, was a large procedure to repair a recurrent massive right rotator cuff tear and to reconstruct the entire rotator cuff that had failed to heal in the previous surgeries. The second surgery on March 1, 2002, was again for relief of the effects of the right shoulder massive rotator cuff tear. This was an arthroscopic surgery to clean out the shoulder and remove hardware and scar tissue in an effort to relieve plaintiff's terrible pain and forestall an eventual arthroplasty.
6. Plaintiff was out of work and temporarily totally disabled as a result of his right shoulder injury and related surgeries from November 25, 1999, through February 13, 2000, from April 25, 2000, through October 15, 2000, and from January 15, 2001, through the present. Plaintiff worked "light duty" for the defendant-employer in the remaining periods between November 25, 1999, and January 15, 2001. However, plaintiff could use only his left arm in performing his job duties during these periods of employment.
7. After stopping work in January 2001, plaintiff used his left arm to do everything because his right shoulder has been essentially useless. Plaintiff cannot raise his right arm. Plaintiff's right arm is normally in a sling and very painful. Plaintiff has used his left arm alone to do such things as clean, do household chores, cook, and carry groceries, to do yard work and to pick up his granddaughter.
8. Plaintiff participated in physical therapy following his right shoulder surgeries. The physical therapy of his right arm required plaintiff to also exercise his left arm.
9. Plaintiff first experienced pain in his left shoulder in November or December 2002. The pain continued and plaintiff reported it to the rehabilitation nurse in February or March 2003 and he told her that he thought that his left shoulder problems were being caused by his inability to use his right arm and shoulder.
10. Dr. Speer first examined plaintiff's left shoulder on or about April 1, 2003. Dr. Speer found a left rotator cuff tear. Dr. Speer indicated that he thought that plaintiff's left shoulder problems were clearly related to his inability to use his right arm and shoulder. Dr. Speer told plaintiff that he needed left shoulder rotator cuff repair and acromial decompression to correct the problems with his left shoulder.
11. On August 18, 2003, Dr. Speer performed an arthroscopy, subacromial decompression, distal clavicle excision and rotator cuff repair to plaintiff's left shoulder. Thereafter, plaintiff's shoulder improved.
12. Defendants caused plaintiff to be seen by Dr. Patrick Connor, an orthopedic surgeon with a sub specialization in shoulder and elbow surgery, for a second opinion as to the cause of plaintiff's left shoulder problems. Dr. Connor saw plaintiff on or about August 12, 2003. At this examination Dr. Connor stated to plaintiff that his left shoulder condition had resulted from the dysfunction of his right shoulder. The rehabilitation nurse met with Dr. Connor following his examination of plaintiff and reported that Dr. Connor opined that client's left shoulder symptoms are "a result of overuse d/t limited use of the right arm." Dr. Connor felt that plaintiff would improve with the left shoulder rotator cuff surgery planned by Dr. Speer.
13. Dr. Connor's report and his deposition are inconsistent with his statements to plaintiff and the rehabilitation nurse who accompanied plaintiff to see Dr. Connor. After Dr. Connor had seen plaintiff and made his original report to plaintiff and the rehabilitation nurse, he inserted an addendum of August 17, 2003, to his evaluation of plaintiff in which he stated, "although intuitively, it is not unreasonable to attribute the patient's left shoulder symptoms to the convalescence and disability with his right shoulder there is no clinical or scientific basis for this assumption." Dr. Connor repeated this opinion in his January 6, 2004, testimony.
14. Dr. Speer testified in his opinion that the left rotator cuff tear was caused by the severe right shoulder dysfunction, is an extension of common sense and the most logical explanation for the left rotator cuff tear. In reaching his opinion, Dr. Speer relied on the absence of any other obvious explanation, on the body of literature dealing with rotator cuff disease, and on his twelve years of experience in orthopedics with a practice consisting of seventy percent shoulder surgery. Dr. Speer confirmed that his opinion was to a reasonable degree of medical probability.
15. The Full Commission gives greater weight to the testimony of Dr. Speer over that of Dr. Conner as Dr. Speer treated plaintiff for a longer period of time and performed surgery upon plaintiff's left and right shoulders.
16. Plaintiff's left rotator cuff tear and pathology for which Dr. Speer performed surgery on August 26, 2003 was the result of plaintiff's long-standing severe dysfunction of his right shoulder.
17. Dr. Speer's August 26, 2003 surgery was reasonable and necessary to repair the left shoulder rotator cuff tear and pathology caused by plaintiff's compensable right shoulder injury.
18. Plaintiff's counsel has submitted an affidavit itemizing the time expended representing plaintiff in this matter for defendant's appeal to the Full Commission. Based upon his experience and expertise, plaintiff's attorney is requesting a fee of $150.00 per hour.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to have defendants provide all medical compensation arising from his injury by accident to his right shoulder and for his related left shoulder rotator cuff tear and pathology beginning April 1, 2003, including the payment for the surgery performed by Dr. Kevin Speer on August 26, 2003. N.C. Gen. Stat. § 97-25.
2. As a part of costs for this appeal to the Full Commission, plaintiff is entitled to the assessment of attorney's fees against defendants pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical expenses incurred by plaintiff as a result of this compensable injury including treatment for the related left rotator cuff tear and pathology when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
2. Additionally, defendants shall pay plaintiff's attorney a reasonable fee as a part of costs for this appeal to the Full Commission. In the discretion of the Full Commission, defendants are ordered to pay to plaintiff's attorney a fee of $1,920.00 pursuant to N.C. Gen. Stat. § 97-88.
This the ___ day of September 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER